IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


LOETTA DENISE BENNETT,

                    Plaintiff,

vs.                                    Case No. 14-1246-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

                    Defendant.


MEMORANDUM AND ORDER

     This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits.  The matter has been fully briefed by the
parties.

## I.  General legal standards

     The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be
conclusive."  The court should review the Commissioner's
decision to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the
correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984
(10th Cir. 1994).  Substantial evidence requires more than a
scintilla, but less than a preponderance, and is satisfied by

such evidence that a reasonable mind might accept to support the conclusion.   The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.   Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.   Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.   Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).   The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.   Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).   The claimant's physical or mental impairment or impairments must be of such severity that

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

3

requires the agency to consider vocational factors (the
claimant's age, education, and past work experience) and to
determine whether the claimant is capable of performing other
jobs existing in significant numbers in the national economy.
Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of
the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th
Cir. 1993). At step five, the burden shifts to the
Commissioner to show that the claimant can perform other work
that exists in the national economy. Nielson, 992 F.2d at 1120;
Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The
Commissioner meets this burden if the decision is supported by
substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will
assess the claimant's residual functional capacity (RFC). This
RFC assessment is used to evaluate the claim at both step four
and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g);
416.920(a)(4), 416.920(e,f,g).

## II.  History of case

On December 4, 2012, administrative law judge (ALJ) Rosanne
M. Dummer issued her decision (R. at 18-29). Plaintiff alleges
that she had been disabled since January 1, 2011 (R. at 18).
Plaintiff meets the insured status requirements for social
security disability benefits through June 30, 2013 (R. at 20).

At step one, the ALJ found that plaintiff did not engage in substantial gainful activity since the alleged onset date (R. at 20). At step two, the ALJ found that plaintiff had a severe combination of impairments (R. at 20). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 20). After determining plaintiff's RFC prior to December 13, 2011 (R. at 21), the ALJ determined at step four that plaintiff was able to perform past relevant work prior to December 13, 2011 (R. at 26). In the alternative, the ALJ determined at step five that, prior to December 13, 2011, plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 27). Therefore, plaintiff was found not to be disabled before December 13, 2011 (R. at 28, 29).

The ALJ then determined plaintiff's RFC beginning December 13, 2011 (R. at 25). At step four, the ALJ found that, beginning December 13, 2011, plaintiff could not perform past relevant work. Furthermore, the ALJ found at step five that plaintiff could not perform other jobs that exist in significant numbers in the national economy as of December 13, 2011 (R. at 28). Therefore, the ALJ found that plaintiff was disabled as of December 13, 2011 (R. at 29).

**III.  Does substantial evidence support the ALJ's finding that plaintiff became disabled as of December 13, 2011, but not before that date?**

The ALJ found that, prior to December 13, 2011, plaintiff had an RFC for medium work and could perform past relevant work and other work that exists in significant numbers in the national economy.  Beginning December 13, 2011, the ALJ limited plaintiff to sedentary work, with other limitations, and concluded that plaintiff was disabled as of that date.

The ALJ found that plaintiff was credible as of December 13, 2011 (R. at 25).  The ALJ noted that on December 13, 2011, plaintiff was seen by Dr. Nickel for neck pain.  Examination on that date showed muscle spasm of the cervical spine.  The ALJ noted her medications, and a list of her chronic problems (R. at 25).  The ALJ also mentioned a consultative examination on December 19, 2011 by Dr. Henderson, which noted plaintiff's complaints and limitations.  Dr. Henderson assessed rheumatoid arthritis and a history of osteoporosis and fibromyalgia, and degenerative changes in the cervical and thoracic spine (R. at 25, 468-471).  However, Dr. Henderson offered no opinions regarding plaintiff's physical limitations or RFC.

The ALJ also discussed a letter from Dr. Nickel, dated July 23, 2012, which states the following:

6

> Loetta has been a patient in my practice for
> over 3 years.  She has had worsening on her
> fibromyalgia and back pain over the past 2
> years.  She is unable to lift over 20 pounds
> infrequently and 10 pounds frequently.  She
> is unable to carry anything over 10 pounds
> for any distance.  She is unable to sit for
> more than 30 minutes at a time and requires
> frequent position changes.  She is unable to
> stand or walk more than 2 hours in an 8 hour
> day.  It is likely she would have to miss
> more than 3 days a month due to her back
> pain and fibromyalgia.
>
> It is unlikely that her symptoms are going
> to improve.

(R. at 507).  The ALJ accorded Dr. Nickel's assessment "great

weight" because it is supported by the evidence as a whole, as

of December 13, 2011 (R. at 26).

     The ALJ also considered two other medical opinions, Dr.

Estivo, who examined plaintiff on July 2, 2011, and found that

plaintiff had a history of fibromyalgia and osteoarthritis with

neck, back and shoulder pain.  He would not recommend any

specific restrictions for plaintiff, noting that plaintiff can

stand, walk, speak, hear and travel (R. at 444-449).  The ALJ

accorded "great weight" to this opinion, at least prior to

December 13, 2011 (R. at 24).

     A state agency medical consultant, Dr. Timmerman, reviewed

the records and prepared a physical RFC assessment on the

plaintiff on January 4, 2012.  Dr. Timmerman limited plaintiff

to medium work (R. at 84-86).  The ALJ accorded "great weight"

to Dr. Timmerman's opinions, and made RFC findings prior to December 13, 2011 that matched the limitations contained in Dr. Timmerman's assessment (R. at 24).

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002). Although the court will not reweigh the evidence, the conclusions reached by the ALJ must be reasonable and consistent with the evidence. See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion). The court can only review the sufficiency of the evidence. Although the evidence may support a contrary finding, the court cannot displace the agency's choice between two fairly conflicting views, even though the court may have justifiably made a different choice had the matter been before it de novo. Oldham v. Astrue, 509 F.3d 1254, 1257-1258 (10th Cir. 2007). The question before the court is whether substantial evidence supports the ALJ's finding that plaintiff was not disabled before December 13, 2011 because plaintiff was capable of medium work prior to that date, and was limited to sedentary work with other limitations as of December 13, 2011, but not before.

The court finds that the ALJ has failed to provide substantial evidence to support its finding that plaintiff was not disabled before December 13, 2011.  First, the ALJ, in support of its finding of greater limitations as of December 13, 2011, noted plaintiff's visit to Dr. Nickel on the same date.  Dr. Nickel's medical records on that date indicate plaintiff visited because of neck pain.  It was noted that the onset of the neck pain was "years ago," that the severity level was moderate, and that it occurs persistently and is worsening (R. at 491).  The record on that date also indicates muscle spasm of the cervical spine and mildly reduced range of motion (R. at 492).  Dr. Nickel assessed thoracic back pain, acute (R. at 493).  As noted by the ALJ (R. at 25), Dr. Nickel on December 13, 2011 listed 11 chronic medical problems for the plaintiff (R. at 491).

However, on February 24, 2011, plaintiff also visited Dr. Nickel.  That medical record lists the same 11 chronic medical problems as are indicated in the medical record of December 13, 2011 (R. at 408, 491).  The reason for the visit on February 24, 2011 included shoulder/elbow pain (follow-up), noting an onset 11 years ago.  Duration was noted as intermittent and fluctuating, with severity level as moderate/severe.  Another reason for the visit was neck pain (follow-up).  Onset for it was 11 years ago, duration was noted as constant, with severity

level as moderate/severe.  Dr. Nickel indicated it occurs
persistently and is fluctuating.  Pain was described as
piercing, sharp and throbbing, that it is aggravated by lifting,
and there are no relieving factors (R. at 408).

Plaintiff also presented to Dr. Nickel on December 8, 2010
for bilateral shoulder pain, described as constant, persistent
and worsening, with a moderate/severe severity level (R. at
399).  Dr. Nickel noted left and right shoulder tenderness (R.
at 400).  Plaintiff visited Dr. Nickel on February 16, 2011 for
left shoulder pain described as piercing, constant, severe and
worsening (R. at 405).  Tenderness in the left shoulder with
decreased range of motion due to pain was noted (R. at 406).
Plaintiff saw Dr. Nickel again on May 16, 2011 for left shoulder
pain, described as constant, persistent, fluctuating with a
moderate/severe severity level.  The records indicate that the
pain was relieved by medication (R. at 426).  Dr. Nickel noted
that spine was positive for posterior tenderness and
paravertebral and bilateral lumbosacral muscle spasm (R. at
427).

A review of the medical records from Dr. Nickel does not
provide a rational basis for finding that plaintiff had
limitations that prevented her from working as of December 13,
2011, but not before that date.  In every visit noted above, Dr.
Nickel noted the same 11 medical chronic problems which the ALJ

mentioned in describing the December 13, 2011 medical record (R. at 25, 399, 405, 408, 426, 491).  The ALJ noted that the December 13, 2011 medical record indicated that plaintiff saw Dr. Nickel for neck pain, and that plaintiff was found to have muscle spasms of the cervical spine (R. at 25, 491).  The December 13, 2011 medical report indicated that the severity of plaintiff's neck pain was moderate, that it occurred persistently and is worsening.  However, the ALJ failed to mention or discuss that plaintiff saw Dr. Nickel on February 24, 2011 for neck pain, duration: constant, severity level: moderate/severe, which occurs persistently and is fluctuating (R. at 408).  The ALJ also failed to note that when Dr. Nickel saw plaintiff on May 16, 2011, he noted that the spine was positive for posterior tenderness, and paravertebral and bilateral lumbosacral muscle spasms (R. at 427).  The medical findings in the December 13, 2011 medical record which the ALJ relied on to find that she had greater limitations as of that date, but not before, were present in a very similar, if not identical form, in the medical records of Dr. Nickel prior to December 13, 2011, especially in the medical record of February 24, 2011.  The court finds nothing in the December 13, 2011 report, when compared to the earlier medical records from her treating physician, which would support a finding that plaintiff

had limitations as of December 13, 2011, but not before, which prevent her from working.

Second, the letter of Dr. Nickel, dated July 23, 2012, states that plaintiff had been "worsening" on her fibromyalgia and back pain "over the past 2 years" (R. at 507), and then described limitations, which the ALJ adopted as of December 13, 2011 (R. at 26, 507).  However, the ALJ failed to provide a reasonable explanation for why these limitations are accorded "great weight" as of December 13, 2011, but not before.

Third, the ALJ gave "great weight" to the opinions of Dr. Timmerman, adopting them regarding plaintiff's limitations before December 13, 2011, but giving "little weight" to them as of December 13, 2011 (R. at 24, 26).  However, Dr. Timmerman offered his opinions on January 4, 2012, reflecting her "current assessment" (R. at 85).  Nothing in Dr. Timmerman's report indicates that plaintiff's limitations became worse as of December 13, 2011, or any other date.  The ALJ provided no reasonable explanation for according great weight to his opinions prior to December 13, 2011, but little weight to his opinions on and after that date.

Plaintiff argues that the ALJ has not explained how plaintiff was not limited to sedentary work until December 13, 2011 (Doc. 11 at 16).  For the reasons set forth above, the court finds that substantial evidence does not support the ALJ's

determination that plaintiff could perform medium work, and was therefore not disabled prior to December 13, 2011, but, as of December 13, 2011, was limited to sedentary work and was found to be disabled as of that date.  The ALJ failed to provide a rational basis for finding that plaintiff's RFC worsened as of December 13, 2011, but not before that date.

The ALJ also failed to provide a rational basis for finding plaintiff credible beginning December 13, 2011, but not fully credible prior to that date.  The ALJ relied on plaintiff's own report that she was able to dote on her grandchildren, pay bills, and perform household chores, despite her impairments (R. at 24).  However, the ALJ failed to indicate how these activities translate into the ability to perform medium work over an 8 hour workday.

According to the regulations, activities such as taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities or social programs are generally not considered to constitute substantial gainful activity.  20 C.F.R. § 404.1572(c) (2013 at 399).  Furthermore, although the nature of daily activities is one of many factors to be considered by the ALJ when determining the credibility of testimony regarding pain or limitations, Thompson v. Sullivan, 987 F.2d 1482, 1489 (10th Cir. 1993), the ALJ must keep in mind that the sporadic performance of household tasks or work does

not establish that a person is capable of engaging in substantial gainful activity.  Krauser v. Astrue, 638 F.3d 1324, 1332-1333 (10th Cir. 2011); Thompson, 987 F.2d at 1490.

In the case of Draper v. Barnhart, 425 F.3d 1127, 1130-1131 (8th Cir. 2005), the ALJ noted that the claimant engaged in household chores, including laundry, grocery shopping, mowing, cooking, mopping and sweeping.  The ALJ concluded that claimant's allegations of disabling pain were inconsistent with her reports of her normal daily activities and were therefore not deemed credible.  The court found that substantial evidence did not support this conclusion, holding as follows:

> **The fact that Draper tries to maintain her home and does her best to engage in ordinary life activities is not inconsistent with her complaints of pain, and in no way directs a finding that she is able to engage in light work.**  As we said in McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir.1982) (en banc), the test is whether the claimant has "the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." In other words, evidence of performing general housework does not preclude a finding of disability.  In Rainey v. Dep't of Health & Human Servs., 48 F.3d 292, 203 (8th Cir.1995), the claimant washed dishes, did light cooking, read, watched TV, visited with his mother, and drove to shop for groceries.  We noted that these were activities that were not substantial evidence of the ability to do full-time, competitive work. In Baumgarten v. Chater, 75 F.3d 366, 369 (8th Cir.1996), the ALJ pointed to the claimant's daily activities,

which included making her bed, preparing
food, performing light housekeeping, grocery
shopping, and visiting friends.  We found
this to be an unpersuasive reason to deny
benefits: "**We have repeatedly held...that
'the ability to do activities such as light
housework and visiting with friends provides
little or no support for the finding that a
claimant can perform full-time competitive
work.**'" Id. (quoting Hogg v. Shalala, 45
F.3d 276, 278 (8th Cir.1995)). Moreover, we
have reminded the Commissioner

> **that to find a claimant has the
> residual functional capacity to
> perform a certain type of work,
> the claimant must have the ability
> to perform the requisite acts day
> in and day out, in the sometimes
> competitive and stressful
> conditions in which real people
> work in the real world...The
> ability to do light housework with
> assistance, attend church, or
> visit with friends on the phone
> does not qualify as the ability to
> do substantial gainful activity.**

Thomas v. Sullivan, 876 F.2d 666, 669 (8th
Cir.1989) (citations omitted).

Draper, 425 F.3d at 1131 (emphasis added).

In Hughes v. Astrue, 705 F.3d 276 (7th Cir. 2013), the court

stated:

> [The ALJ] attached great weight to the
> applicant's ability to do laundry, take
> public transportation, and shop for
> groceries. We have remarked the naiveté of
> the Social Security Administration's
> administrative law judges in equating
> household chores to employment. "The
> critical differences between activities of
> daily living and activities in a full-time
> job are that a person has more flexibility

in scheduling the former than the latter,
can get help from other persons (... [her]
husband and other family members), and is
not held to a minimum standard of
performance, as she would be by an employer.
The failure to recognize these differences
is a recurrent, and deplorable, feature of
opinions by administrative law judges in
social security disability cases [citations
omitted]."

705 F.3d at 278.  Therefore, the fact that plaintiff dotes on

her grandchildren, shops, pays bills, and performs household

chores does not demonstrate that plaintiff can engage in work at

a competitive level over an 8 hour day, and is not inconsistent

with plaintiff's allegation of disability.

IT IS THEREFORE ORDERED that the judgment of the

Commissioner is reversed and remanded pursuant to sentence four

of 42 U.S.C. § 405(g) for further proceedings consistent with

this memorandum and order.

Dated this 9th day of September 2015, Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge